UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RONALD T. TAYLOR, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| BIG NIGHT ENTERTAINMENT | ) | |
| GROUP, INC.; BIG NIGHT VENUES | ) | |
| BOSTON 2, LLC d/b/a EMPIRE; | ) | |
|     Defendants. | ) | |

## COMPLAINT

Plaintiff Ronald Taylor, by and through counsel, hereby files this Complaint to recover for Defendants' retaliatory and wrongful termination of his employment and states as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to:

    a. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; and

    b. Mass. G.L. c. 151B.

2. Plaintiff Ronald Taylor resides in Stoughton, Norfolk County, Massachusetts.

3. Defendant Big Night Entertainment Group, Inc. ("BNEG") is a Massachusetts corporation with a principal place of business at 470 Atlantic Avenue, Suite 301 in Boston, Suffolk County, Massachusetts.

4. Defendant Big Night Venues Boston 2, LLC is a Massachusetts limited liability company with a principal place of business at 470 Atlantic Avenue, Suite 301 in Boston, Suffolk County, Massachusetts.

5. Until December 29, 2018, Defendants employed Plaintiff at Empire, a restaurant and nightclub located at 1 Marina Park Drive in Boston, Suffolk County, Massachusetts.

6. On April 22, 2019, Plaintiff filed complaints of discrimination/retaliation with both the U.S. Equal Employment Opportunity Commission and the Massachusetts Commission Against Discrimination.

7. On January 23, 2020, after making a finding of discriminatory retaliation and after Defendants declined to participate in conciliation, the EEOC sent its Notice of Right to Sue to the Plaintiff.

8. The Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 2000e-5(f)(3).

9. The Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

10. Because the parties reside in the district and because the unlawful employment practices occurred in the district, venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 2000e-5(f)(3).

## PARTIES

11. Plaintiff is an African-American male whom Defendants employed from February 18, 2018 until December 29, 2018.

12. Defendants are employers within the meaning of 28 U.S.C. § 2000e and G.L. c. 151B, § 1.

## FACTS

13. Empire is a restaurant during the day and early evenings and becomes a nightclub with dance music and a lively bar scene continuing after dinner service has ended.

14. After working for five years at a hospital, Ronald Taylor applied for a job at Empire in the Seaport District.

15. BNEG hired Mr. Taylor as an Empire security officer on February 18, 2018.

16. A manager at Empire told Mr. Taylor that he could ask about a raise in pay after being on the job for six months.

17. Mr. Taylor performed well as a security officer, including disarming a disgruntled customer who had pulled a knife on Mr. Taylor.

18. Empire did not give Mr. Taylor any warnings or discipline while he was employed at the nightclub and, on information and belief, he states that Empire was pleased with his job performance, punctuality and reliability.

19. When Mr. Taylor inquired about a raise in August or September 2018, BNEG's manager told him that raises would be discussed toward the end of the year.

20. In the meantime, Mr. Taylor made arrangements in advance to host a celebration in October 2018 for his brother's pending wedding ceremony reserving a table at Empire followed by reservations at The Grand, a separate and larger BNEG-owned nightclub in the Seaport District.

21. But, when Mr. Taylor (who was not working that night) and his guests arrived at Empire, they were made to wait in the bar for 35 minutes despite Mr. Taylor's reservation for the group a month in advance and despite other similarly sized parties being seated before Mr. Taylor and his guests.

22. Approximately one-and-a-half hours after being seated, a BNEG concierge/host told the group that a lot of other customers wanted to sit in their section and so led the group on foot from Empire to The Grand on Seaport Boulevard.

23. Before entering The Grand, however, another BNEG concierge stopped the group to explain that their reservations would not be honored ostensibly because the group was too inebriated. The dejected group returned to Empire, where they no longer had a table, before calling it an evening.

24. On or about December 16, 2018, Mr. Taylor approached one of his managers (Bobby) and a supervisor (Jamie) at Empire to discuss a pay raise.

25. Mr. Taylor pointed out that the pay structure did not appear fair because a white security officer hired after him was paid more for working the front door and doing less (*e.g.*, did not have to help clean up after Empire closed).

26. The supervisory manager again postponed Mr. Taylor's request for a raise stating that he (the manager) would look into the matter and that they would meet again in a month.

27. On December 29, 2018, Mr. Taylor was working as a security officer inside Empire during the post-dinner nightclub phase of Empire's daily operation.

28. During his shift, Mr. Taylor inquired of a manager about the procedure for requesting a transfer from Empire to it's sister venue The Grand, which is a larger location with more opportunities for paid work, and how to give notice to Empire if such a transfer were possible so that Empire would not be short-staffed. Mr. Taylor did not give notice that he was quitting his job at Empire.

29. At another point during his shift on December 29th, Mr. Taylor asked his immediate supervisor, Rich, for permission to leave his post to use the restroom, which was granted.

30. On his way back to his post, Mr. Taylor walked to the front of the club to get a quick breath of fresh air.

31. In the front of Empire, Roberto Semidei, Empire's Assistant Director of Operations, confronted Mr. Taylor and berated him for not being at his assigned position. Mr. Taylor respectfully explained that he had asked for and received permission to take a bathroom break and that he was allowed to get a "breather" before returning to his post.

32. Mr. Semidei then talked with Mr. Taylor's immediate supervisor, who confirmed that Mr. Taylor had asked permission to leave his post.

33. Nevertheless, after Empire closed that night, Mr. Semidei called all the club's employees for an impromptu staff meeting in order for Mr. Semidei to explain the importance of remaining at assigned posts during business hours and not to give their friends special treatment in Empire.

34. After Mr. Semidei's statement, Mr. Taylor civilly asked why the rules were important to enforce against minority guests who tried to enter Empire without meeting the dress code when management consistently allowed white guests who violated the same rules into the club.

35. Mr. Semidei yelled at Mr. Taylor to go home and not to return to any BNEG establishment.[1]

36. Mr. Taylor promptly left the staff meeting without responding to Mr. Semidei's abrupt dismissal.

---

[1] At that time, BNEG owned and operated approximately thirteen establishments in Massachusetts and Connecticut, about six of which were in Boston.

37. On December 30, 2018, Mr. Taylor received a phone call at home from Charles Kane, BNEG's Vice President of Security, who told Mr. Taylor that BNEG was accepting his two-week's notice to quit.

38. When Mr. Taylor responded that he had not given Empire or BNEG his two-week notice, Mr. Kane ignored this response.

39. Instead, Mr. Kane repeated that BNEG was accepting his notice to quit and that Mr. Taylor did not need to return to work or to attend the year-end party for the entire Empire staff, which was the next night.

40. After the call, Mr. Taylor sent a text message to Mr. Kane requesting that BNEG mail his final check to him.

41. BNEG did not mail the check, which Mr. Taylor had to pick up at the restaurant. BNEG paid Mr. Taylor for his time through December 29, 2018, but did not pay Mr. Taylor for his unused vacation days and sick leave.

42. Mr. Taylor subsequently filed complaints with:

   a. the Massachusetts Attorney General's Office (March 11, 2019);

   b. the Massachusetts Commission Against Discrimination (April 22, 2019); and

   c. the U.S. Equal Employment Opportunity Commission (April 22, 2019) (**Exhibit "A"** hereto).

43. Mr. Taylor applied for jobs without success until the end of 2019 when he began part-time work for a Dunkin' Donuts franchise.

44. Since being terminated by BNEG, Mr. Taylor's health has deteriorated in part because of a lack of health insurance and in part because of the stress caused by unemployment, especially with regard to providing for and raising his children.

45. On November 20, 2019, the EEOC, after an investigation and after receiving position statements from both Mr. Taylor and BNEG, determined that BNEG had retaliated against Mr. Taylor by immediately and publicly terminating his employment for asking a legitimate question about his employer's practices (**Exhibit "B"** hereto).

46. Mr. Taylor confirmed that he was willing to engage in conciliation over the EEOC's findings, but BNEG did not respond to requests to confer about settling this matter.

47. Accordingly, on January 23, 2020, the EEOC determined that attempts to conciliate the matter were futile and sent Mr. Taylor notice of his right to seek redress in the courts (**Exhibit "C"** hereto).

## COUNT I
**Violation of 42 U.S.C. § 2000e-3: Retaliation**

48. Plaintiff incorporates the allegations in paragraphs 1-47 herein.

49. Managers representing Empire and BNEG terminated Mr. Taylor's employment suddenly and in front of the entire Empire shift because Mr. Taylor had asked a legitimate question about his employers' apparent discriminatory practices.

50. No legitimate or justifiable business reason exists to warrant Mr. Taylor's summary termination.

51. As a result of Defendants' wrongful actions, Mr. Taylor has suffered a loss of income and other damages.

## COUNT II
### Violation of Mass. G.L. c. 151B, § 4: Retaliation

52. Plaintiff incorporates the allegations in paragraphs 1-51 herein.

53. Defendants terminated Mr. Taylor's employment suddenly and in front of the entire Empire shift because Mr. Taylor had asked a legitimate question about Defendants' apparent discriminatory practices.

54. No legitimate or justifiable business reason exists to warrant Mr. Taylor's summary termination.

55. As a result of Defendants' wrongful actions, Mr. Taylor has suffered a loss of income and other damages.

**WHEREFORE**, Plaintiff Ronald Taylor prays that the Court:

1. Find in favor of Plaintiff on Count I, 42 U.S.C. § 2000e-3, in an amount to be determined at trial.

2. Find in favor of Plaintiff on Count II, Mass. G.L. c. 151B, § 4, in an amount to be determined at trial.

3. Award compensatory and punitive damages on each and every cause of action.

4. Award back pay and unpaid wages on each and every cause of action.

5. Award such other relief as may be necessary to make Plaintiff whole on each and every cause of action.

6. Award Plaintiff his costs and disbursements in prosecuting this action.

7. Award Plaintiff his reasonable attorney fees.

8. Award such other equitable relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all claims so triable, pursuant to Fed. R. Civ. P. 38(b).

                                            Respectfully submitted
                                            PLAINTIFF RONALD T. TAYLOR
                                            by his attorney

                                            /s/ George F. Gormley

                                            George F. Gormley (BBO #204140)
                                            GEORGE F. GORMLEY, P.C.
                                            160 Old Derby Street, Suite 456
                                            Hingham, MA 02043
                                            tel: (617) 268-2999
                                            fax: (617) 268-2911
Date: April 16, 2020                      email: gfgormley@aol.com